(C. D. 1549)

CAREY & SKINNER, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Dated October 19, 1953)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This case is before us on a motion made by counsel for the Government to dismiss the protest with respect to entry No. 6708 on the ground of untimeliness. The protest covers three entries of merchandise described as hair-on leather, imported from Canada on various dates between March 14, 1949, and June 13, 1949, and entered at the port of Niagara Falls, N. Y.

An examination of the official papers discloses that entry No. 6708 is marked "Liquidated as Noted Sep 15 1949." The protest was filed more than 60 days thereafter, on November 17, 1949. On its face, it is untimely within the purview of section 514 of the Tariff Act of 1930.

Plaintiff claims, however, that the liquidation was not completed until the entry papers were available for inspection by the importer; that they were not available until September 20th, the purported date of receipt of entry papers, or September 22, 1949, the date of notice to importer of duties due; and that, therefore, the protest is timely.

In support of its claim, plaintiff presented the testimony of three witnesses. Arthur F. Caldwell, Jr., deputy collector of liquidation at the port of Buffalo, testified that he had supervision over the liquidation of entries made at Niagara Falls and described the procedure as follows:

* * * When the entries are returned from the comptroller at New York in a verified condition, that is verified with regard to our tentative first liquidation, the entries are bulletined by a clerk in our division, liquidation division, on customs form 4333. Then the entries themselves are stamped with a date of liquidation, which date appears on the top of the bulletin notice, as being the date of the liquidation. This date of liquidation is so determined that the bulletin notices of the liquidation will reach the sub-port of Niagara Falls in time to be posted at that place as of the date of liquidation. In other words, it's actually dated—might be a day or two ahead.

Mr. Caldwell stated that it was the practice to retain the liquidated entries in Buffalo until the deputy collector in charge at Niagara Falls visited the office, usually every Tuesday, at which time he picked up the accumulated entries and took them back with him.

Melvin Treichler, cash accounting assistant in the office of the deputy collector at Niagara Falls, testified that bulletin notices at that port are posted on a clip board as of the date of receipt and displayed in a small office where people come to pay duties to the cashier. The witness stated that the entries are not always on hand when the notices are posted, as they are ordinarily received once a week from Buffalo on Tuesdays. He said, however, that his office does receive entries and notices of liquidation at the same time for various entries and he is "unable to distinguish which, and at what time."

Mr. Treichler testified that he prepared the demand for increased duties for entry No. 6708 on customs Form 5107. This notice, which was received in evidence as plaintiff's exhibit 1, is dated September 22, 1949. The witness stated that while it was possible that an entry might not be in his office at the time the liquidation sheet is posted, it is there when the demand is sent out, since the demand is prepared from the entry papers. In the case at bar, he said, the liquidation was made on September 15, 1949, a Thursday, and ordinarily the deputy collector picks up entries at Buffalo on a Tuesday, which in the present instance would have been September 20, 1949.

The bulletin notice of entries liquidated on September 15, 1949, was received in evidence as defendant's exhibit A, and Mr. Treichler testified that he had posted it. It lists entry No. 6708, and under the heading "Remarks," opposite the entry number, is the word 'Increase."

William C. Carey, president and treasurer of the plaintiff firm of customs brokers, testified that in 1949 he was at the customhouse in Niagara Falls practically 5 days a week. During that time, he had had very few occasions when he attempted to examine Niagara Falls entries on the same day they were posted as liquidated. He stated that usually the entries were not on hand for inspection until a few days later, and that, except in rare cases, he first learns that an entry has been liquidated with an increase in duty when he receives a notice of advance, such as plaintiff's exhibit 1.

Mr. Carey admitted that he had known for a long time of the procedure under which Niagara Falls entries are picked up once a week in Buffalo. However, although his office is within a short distance of the collector's office in Buffalo, he never tried to look at entries until they reached Niagara Falls. He added that he rarely looked at the bulletin board in Niagara Falls, since it is posted in a small room off the cashier's cage.

Mr. Carey testified that notices of increased duties are usually handed to him in Niagara Falls and at that time he looks at the entries. In the instant case, however, he could not state how much time elapsed after the receipt of the notice before he checked the entry papers.

The witness admitted that when he received the notice, dated September 22, 1949, he would have had ample time to file the protest

within 60 days after liquidation, had he had authority from the shipper to do so. He said that the question as to whether a protest should be filed in connection with this type of merchandise had been debated a long time, probably a year, and that about 20 entries had been protested, but 40 or 50 had not been protested.

Under section 514 of the Tariff Act of 1930, a collector's liquidation becomes final and conclusive upon all persons 60 days after the date thereof, unless the importer, consignee, or agent files a protest in writing with the collector within 60 days of such liquidation. *Gallagher & Ascher* v. *United States*, 21 C. C. P. A. (Customs) 313, T. D. 46832; *Wood & Selick, Inc.* v. *United States*, 24 C. C. P. A. (Customs) 355, T. D. 48804. Section 505 of said act provides further that the collector shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury.

The customs regulations, in effect at the time of the within entry, provided:

### 16.2  Procedure; notice of liquidation.

\*     \*     \*     \*     \*     \*     \*

(*d*)  Upon the return of entries to the collector after the assessment of duties and internal-revenue taxes has been verified by the comptroller, formal entries shall be immediately scheduled on a bulletin notice of liquidation, customs Form 4333. * * * The bulletin notice of liquidation shall be posted as soon as possible in a conspicuous place in the customhouse for the information of importers or lodged at some other suitable place in the customhouse in such a manner that it can readily be located and consulted by all interested persons, who shall be directed to that place by a notice maintained in a conspicuous place in the customhouse stating where notices of liquidations of entries are to be found. The bulletin notice of liquidation shall be dated with the date of posting or, if not posted, with the date it is lodged in the above-described place for the information of importers. The entries for which the bulletin notice of liquidation has been prepared shall be stamped "Liquidated," with the date of liquidation, which shall be the same as the date of the bulletin notice of liquidation. Such stamping shall be deemed the legal evidence of liquidation.

\*     \*     \*     \*     \*     \*     \*

(*g*)  The bulletin notice of liquidations, customs Form 4333, shall be posted or lodged at the port of entry, though it may have been prepared at the headquarters port. (Sec. 7, 52 Stat. 1081, secs. 505, 624, 46 Stat. 732, 759; 19 U. S. C. 1321, 1505, 1624.)

In the instant case, it appears that these regulations were complied with, but plaintiff claims that the liquidation was not completed until the entry papers were available for inspection in Niagara Falls. "Liquidation" means the "final computation and ascertainment of the duties due on merchandise, which computation or ascertainment is based on official reports as to the quantity, character, and value thereof." *Bacardi Corporation* v. *United States*, 11 Ct. Cust. Appls. 252, 254, T. D. 39078. Therefore, purported liquidations have been held to be incomplete where all of the necessary reports were not before the collector at the time of his action. *Bacardi Corporation* v.

*United States, supra; United States* v. *V. P. Roberts & Co.*, 34 C C. P. A. (Customs) 135, C. A. D. 356; *E. Fucini & Co., Inc.* v. *United States*, 4 Cust. Ct. 174, C. D. 317; *Karavan Trading Co.* v. *United States*, 21 Cust. Ct. 131, C. D. 1141. It has also been held that a liquidation is not complete where the bulletin notice thereof has not been given in the form and manner prescribed by the Secretary of the Treasury. *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. (Customs) 205, C. A. D. 147; *United States* v. *B. Holman, Inc.*, 29 C. C. P. A. (Customs) 3, C. A. D. 164; *Standard Oil Co. of Louisiana* v. *United States*, 33 C. C. P. A. (Customs) 152, C. A. D. 329.

In the instant case, the evidence is insufficient to establish that the collector did not have sufficient information before him to make the liquidation and that a bulletin notice was not posted, in accordance with the regulations then in force. It has been held that where such a notice has been posted, the importer is bound to file its protest within 60 days thereafter. *United States* v. *Mexican Petroleum Corp.*, 28 C. C. P. A. (Customs) 90, C. A. D. 130.

Plaintiff relies, however, upon *Wong Sang Man* v. *United States*, 27 Cust. Ct. 248, C. D. 1379. In that case, a bulletin notice of liquidation was posted in the customhouse at San Francisco on July 7, 1948, and on July 23, 1948, an employee of the customs brokerage firm checked the notice and copied the data thereon. Since the notice did not indicate the amount of or the reason for a decrease in the amount of duty due, it was necessary to check the actual liquidation figures to determine whether a protest should be filed. It was then the practice at San Francisco to hand the entries, after liquidation, to the warehouse division to copy the figures into the warehouse ledger and then to place them in the brokers' box or drawer. Plaintiff's employee looked in the drawer for the entry but was unable to find it. She inquired at the warehouse division and the record room and made periodic checks thereafter, but the entry was not located until September 13, 1948. Under those circumstances, the court held that the liquidation was not complete until an opportunity had been afforded the proper parties to learn of the facts of the liquidation and that, therefore, the statute of limitations did not begin to run until September 13, 1948. In that case, the failure to make the entry available was found to be the fault of the defendant, or its agents, and the papers were not discovered until more than 60 days after the posting of the notice of liquidation.

As a general rule, ignorance of the existence of a cause of action does not nullify the statute of limitations, particularly where the facts may be ascertained by inquiry or diligence. Even fraudulent concealment will not nullify the statute if the failure to discover the cause of action is due to plaintiff's own negligence or lack of diligence,

or where the cause of action is known or there is a presumption of knowledge thereof. 54 C. J. S. 216–222; 34 American Jurisprudence 186–193; *Wood* v. *Carpenter*, 101 U. S. 135; *Felix* v. *Patrick*, 145 U. S. 317; *Curtis, Receiver, etc.* v. *Connly*, 257 U. S. 260.

Moreover, the limitation prescribed by a statute granting the right to sue the Government is a qualification of the right; it is jurisdictional and cannot be waived. 34 American Jurisprudence (Cum. Supp.) 4; *James Akeroyd & Son* v. *United States*, 19 C. C. P. A. (Customs) 249, T. D. 45341, and cases there cited; *Holmberg* v. *Armbrecht*, 327 U. S. 392, 395.

In the instant case, there is no evidence that the failure to file the protest within 60 days after the date of liquidation was due to any delay on the part of customs officials in furnishing the entry papers to the importer or its agents. In fact, it was not clearly established that the entry papers were unavailable for inspection when the notice was posted. The customs broker testified that it was not his practice to check the bulletin notices of liquidation, but that he first learned of a liquidation upon receipt of the collector's demand for increased duties. Since an importer is bound to take notice of a bulletin notice of liquidation, plaintiff had at least constructive knowledge that the liquidation herein had occurred on September 15, 1949. *Gallagher & Ascher* v. *United States*, *supra*. There is no evidence that the plaintiff or its agents attempted to find the entry papers at that time; therefore, it cannot be held that due diligence was exercised. The reason for the delay in filing the protest appears to be not that the entry papers may have been unavailable for inspection but that the plaintiff or its principal did not decide soon enough that protests should be filed as to this type of merchandise.

In view of the authorities cited and under the circumstances of this case, we hold that the protest, with respect to entry No. 6708, is untimely and should be dismissed.

The motion to dismiss the protest herein insofar as it relates to entry No. 6708 is granted, and the case is restored to the next Buffalo docket of this court for all other purposes.